IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

GREGORY A.  VANSTONE,               )
                                    )
          Plaintiff,                )
                                    )
vs.                                 )          Case No.  5:05-cv-2367-TMP
                                    )
KARLA REED, RICKY HOWARD,           )
DAVID WISE, BILLY MITCHEM,          )
STEVE HAYES, DONAL CAMPBELL,        )
RON CAVANAUGH,                      )
                                    )
          Defendants.               )


<u>MEMORANDUM OPINION</u>

This cause is before the court on the special report of the defendants, filed on June 27, 2006, which the court has notified the parties would be treated as a motion for summary judgment.  The court advised the parties of its treatment of the special report as a motion for summary judgment on July 18, 2006 (Doc. 18), and January 11, 2007 (Doc. 23).  To date, even though represented by counsel during that time, plaintiff has not filed any opposition to the motion.[1]


<u>I.  Summary Judgment Standard</u>

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking  summary judgment "always

---

[1]     The parties have consented to the exercise of jurisdiction by the undersigned, pursuant to 28 U.S.C. § 636(c).

bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  Celotex, 477 U.S. at 322-23.  There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)).  The nonmoving party need not present evidence in a form necessary for admission at trial; however, she may not merely rest on her pleadings.  Celotex, 477 U.S. at 324.  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The substantive law will identify which facts are material and which are irrelevant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

2

248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id. at 248.  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249.  His guide is the same standard necessary to direct a verdict:  "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983).  However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989).  Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff.  Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988).  Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor.  Anderson, 477 U.S. at 255.  The non-movant need not be given the benefit of every inference but only of every reasonable inference.  Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II.  Undisputed Facts

Applying the foregoing standards to the evidence before the court, the following facts appear to be undisputed, or if disputed, are taken in a light most favorable to the plaintiff.

From 1999 to 2004, plaintiff was incarcerated at the Limestone Correctional Facility serving a penal sentence.  While there, plaintiff entered and participated in at least two drug and substance abuse programs operated by the prison system.  Defendant Karla Reed was plaintiff's drug counselor, and her supervisor was defendant Ricky Howard.  Defendants Mitchem and Wise were, respectively, the warden and assistant warden at Limestone.  Donal Campbell was the Commissioner of the Department of Corrections, and defendant Steve Hayes was his executive assistant.  Finally, defendant Cavanaugh was the state-wide supervisor or director of the Department of Corrections' substance-abuse rehabilitation programs, including those in which plaintiff participated.

As part of the Substance Abuse Program ("S.A.P."), plaintiff and other inmates were housed in a special dorm in which they had intensive drug counseling and classes.  Eventually, plaintiff worked his way through the program to the point of becoming an "intern," working principally with defendant Reed.  Reed used plaintiff as an assistant, assigning tasks to him, including drafting treatment plans, making bed assignments, conducting drug classes, and leading group encounter sessions with other inmates.  Indeed, plaintiff describes his assignments as, essentially, performing Reed's job.  He asserts that she often remained in her office, while plaintiff was directed to teach her classes or otherwise fill in for her, even in her absence from the institution.  Plaintiff claims that, in substance, he was performing Reed's job for her.  Defendant Howard was aware of how extensively Reed was using plaintiff to perform her daily job obligations.

4

These duties sometimes included leading "cardinal rules violations" meetings.  These appear to be meetings or investigations within the S.A.P., when it is alleged that an inmate in the program has violated a central, or cardinal, rule.  When this happens, the inmate is confronted by other inmates in a group session involving a discussion of the reasons for the violation and the proper consequences for it.  Plaintiff often led these group sessions in the absence of Reed, and this created hostility toward plaintiff by other inmates because he was seen to be acting in a position of authority.

Inmates participating in the S.A.P. were frequently given favorable "work reports" and certificates as proof of the successful participation in the program.  These work reports and certificates could be considered by institutional classification staff and the Parole Board in making decisions concerning an inmate's security and housing classification and, even, release on parole.  It appears, however, that the awarding of such work reports and certificates were contrary to the policy of the S.A.P. prior to 2004, and plaintiff alleges that defendant Reed improperly awarded work reports and certificates to other inmates who had not participated in S.A.P., or who had violated the rules of the program.

In the fall of 2003, plaintiff complained to Reed that he had not received any good work reports or certificates from the S.A.P., even though he was then working as an intern, performing many of the duties ordinarily performed by Reed herself.  In response to the complaints, Reed obtained permission from Warden Mitchem to prepare and back date work reports and certificates for plaintiff covering that period of time that he participated in S.A.P.  When Reed presented these papers to plaintiff, however, he tore them up, saying "This is not good enough."

Plaintiff continued to complain to Reed and others in the prison administration, including Howard and Mitchem, that he was not being properly recognized for his accomplishments in S.A.P.,

5

and that Reed was improperly delegating work to him.  Plaintiff and his family and friends contacted defendant Hayes in the Commissioner's office to complain about the S.A.P., and Hayes assured them that he would "look into it."  Ultimately, plaintiff was transferred to another prison, Staton, where he was not allowed to participate in the drug programs.  The decision to transfer him was made by Assistant Warden Wise, because, according to Wise, plaintiff had become infatuated with Reed and was attempting to "assert ownership" over the S.A.P., which caused security concerns.  Both Mitchem and Wise advised the plaintiff to cease his negative and disruptive behavior, but he continued to complain about Reed and the S.A.P.

In March 2002, while in the Limestone S.A.P., plaintiff was involved in a confrontation with another S.A.P. inmate, Cooper.  The next day, while standing in the store line, plaintiff was assaulted by another inmate, Thomas.  Later, plaintiff was approached by inmate Cooper, who asked, "Are you going to put this before the [S.A.P.] group?"  Plaintiff took the remark as indicating that Cooper had arranged the assault because plaintiff was perceived as in a position of authority in S.A.P.

Discussion

Based on these facts, plaintiff alleges three theories for recovery: (1) that he was denied equal protection because he was treated differently from other inmates when it came to awarding work reports and certificates; (2) that defendants exposed him to assault by other inmates by putting him in a position of authority in the S.A.P.; and (3) that defendants retaliated against him by transferring him to Staton and denying him the chance to participate in the drug programs there because he complained about his treatment in the Limestone S.A.P.  The court finds that the defendants are entitled to summary judgment on these claims.

Equal Protection

Plaintiff alleges that he was treated differently from other inmates in the Limestone S.A.P., but has identified only the specific allegation that he was denied favorable work reports and certificates given to other inmates.  Plaintiff seems not to dispute, however, that in the fall of 2003, Reed offered plaintiff such work reports and certificates, which he rejected as "not good enough." Instead, plaintiff wanted Reed to write a letter directly to the Parole Board describing plaintiff's good participation and progress in the program.

A claim of denial of equal protection under the law involves two elements: differential treatment and invidious discrimination.  "To establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis." Sweet v. Secretary, Department of Corrections, 467 F.3d 1311, 1318-3119 (11th Cir. 2006), citing Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001); Damiano v. Florida Parole and Probation Commission, 785 F.2d 929, 932-33 (11th Cir. 1986).  In the instant case, plaintiff has not attempted to allege any facts showing that his different treatment was motivated by any invidious considerations.  He has not alleged any factual basis supporting that he was denied work reports and certificates because of his race, gender, national origin, or other protected status.  Rather, he seems to allege that Reed failed to do so because she wanted to have him continue work as her "intern" and carry her workload.  This fails to establish invidious discrimination as an essential element of an equal protection violation.

Protection from Assault

Plaintiff's second claim alleges that, by requiring him to lead S.A.P. encounter sessions and classes, the defendants put plaintiff in the position of being perceived by other inmates as being in a position of authority, which led to him being assaulted by other inmates.  Even assuming for sake of argument that the March 2002 assault — the only one alleged by plaintiff — was motivated in some way by plaintiff's role in S.A.P., the claims fails because plaintiff has not alleged any facts to show that any of the defendants were aware of any threat to plaintiff.  To establish a claim for failure to protect an inmate from harm by other inmates, the plaintiff must allege and prove that prison officials were deliberately indifferent to a known risk of harm to him.  The Eighth Amendment's prohibition on cruel and unusual punishments imposes upon prison officials the duty to "'take reasonable measures to guarantee the safety of the inmates'" in their custody.  Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).  This duty includes protecting inmates "from physical assault by other inmates."  Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986).  However, not every injury inflicted by one prisoner upon another "translates into constitutional liability for prison officials responsible for the victim's safety."  Farmer v. Brennan, 511 U.S. at 834.  See also Zatler v. Wainwright, 802 F.2d at 400; Gullatte v. Potts, 654 F.2d 1007, 1012 (5th Cir. 1981).  It is only when prison officials' deliberate indifference to a known danger or risk exposes an inmate to "objectively, 'sufficiently serious'" harm, that a constitutional violation occurs.  Farmer v. Brennan, 511 U.S. at 834.  See also Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir.), cert. denied, 496 U.S. 928 (1990).

A danger or risk is "known" only if the prison official is both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he . . . draw[s] th[at]

8

inference." <u>Farmer v. Brennan</u>, 511 U.S. at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived, but did not," is not sufficient to establish liability on the part of the official. *Id*. at 838. Furthermore, "[t]he known risk of injury must be a '"strong likelihood, rather than a mere possibility."'" <u>Brown v. Hughes</u>, 894 F.2d at 1537 (<u>quoting</u> <u>Edwards v. Gilbert</u>, 867 F.2d 1271, 1276 (11th Cir. 1989)).

In the instant case, plaintiff describes an assault that came as a surprise even to him. He has not alleged how any of these defendants could have been aware that inmates Cooper or Thomas planned to attack the plaintiff. Absent knowledge of a potential risk to plaintiff, the defendants cannot be said to have been deliberately indifferent to that risk. Thus, plaintiff has not alleged an Eighth Amendment violation, and the facts taken in his favor show an unexpected, surprise attack.


<u>Retaliation</u>

Finally, plaintiff alleges that he was transferred to Staton and denied access to the drug-counseling programs there in retaliation for his having complained about his treatment in the Limestone S.A.P.

It is well settled that "an act in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for different reasons, would have been proper." <u>Howland v. Kilquist</u>, 833 F.2d 639,644 (7th Cir. 1987); <u>see also</u> <u>Wildberger v. Bracknell</u>, 869 F.2d 1467 (11th Cir. 1989). Recently, in <u>Boxer X v. Harris</u>, ___ F.3d ___, 2006 WL 196972 (11th Cir., Jan. 27, 2006), the Eleventh Circuit reiterated that "First Amendment rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment." However, it has been

9

recognized that claims of retaliation are subject to abuse by prisoners.  Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983).  Consequently, claims alleging unconstitutional retaliation must be factual, and mere conclusory allegations of retaliation will not suffice.  Adams v. James, 797 F. Supp. 940, 948 (M.D. Fla. 1992), Frazier v. Dubois, 922 F.2d 560, 562 n.1 (10th Cir. 1990). Plaintiffs must at least set forth facts which show a chronology of events from which retaliation may be inferred.  Benson v. Cady, 761 F.2d 335, 342 (7th Cir. 1985).  Within this chronology of events, a plaintiff must show that his conduct was constitutionally protected and that his exercise of the protected right was a "motivating factor" behind the defendants' actions against him. Mount Healthy City School District Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).

In order to overcome a motion for summary judgment on a claim of retaliation, the plaintiff must allege sufficient facts from which retaliation can be inferred.  This Circuit has routinely applied the analysis enunciated by the Supreme Court in Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977), to assess whether conduct that was otherwise lawful was motivated, at least in part, by an unlawful desire to retaliate for the exercise of a constitutional right.  This analysis involves a shifting burden of proof that first requires the plaintiff to show by a preponderance of the evidence that her conduct was constitutionally protected and that her conduct was a substantial or motivating factor in the defendants' actions against her.  If the plaintiff carries that burden, then the burden shifts to the defendants to prove by a preponderance of the evidence that they would have made the same decision even in the absence of the protected conduct. Id., 429 U.S. at 287, 97 S. Ct. at 576.

In a prisoner case, something more is necessary to state a claim under § 1983 than the mere allegation that prison officials retaliated against him for exercising a constitutional right.  The Court

of Appeals for the Seventh Circuit has provided some guidance in addressing prisoner retaliation

claims brought pursuant to § 1983.  In Cain v. Lane, 857 F.2d 1139 (7th Cir. 1988), the court for the

Seventh Circuit made the following observation:

> ... Not every claim of retaliation by a disciplined prisoner, who either has had contact
> with, or has filed a law suit against prison officials, will state a cause of action for
> retaliatory treatment. Rather, the prisoner must allege a chronology of events from
> which retaliation may plausibly be inferred. Murphy v. Lane, 833 F.2d 106, 108-109
> (7th Cir. 1987) (holding that the plaintiff's complaint "set forth a chronology of
> events from which retaliatory animus on the part of defendants could arguably be
> inferred" sufficient to overcome a motion). See also Benson v. Cady, 761 F.2d 335,
> 342 (7th Cir. 1985) (noting that "alleging merely the ultimate fact of retaliation is
> insufficient"). Barring such a chronology, dismissal may be appropriate in cases
> alleging retaliatory discipline.

Id. at n.6, 1143.

Once a prisoner has alleged facts that make out a prima facie case of retaliation, the burden

of articulating a legitimate, non-retaliatory reason for the action taken shifts to the defendant.  Absent

the articulation of a legitimate reason for the action, the presumption of retaliation is enough for the

prisoner to win.  But, if the defendant articulates a legitimate, non-retaliatory reason for his actions,

the burden of proof returns to the plaintiff to show that the proffered reason is a mere pretext for

retaliation.  He may do that by offering direct proof of a retaliatory motive or by showing otherwise

that the proffered reason is not worthy of belief.

In this case, plaintiff has alleged nothing more than that the transfer to Staton was for the

illegitimate purpose of punishing him for complaining about the S.A.P. at Limestone.  Defendants

have articulated through the affidavit of Assistant Warden Wise a legitimate motivation for the

transfer, and that is that plaintiff had become a security concern due to his infatuation with Reed and

11

his effort to "take ownership" over the S.A.P.  Plainly, if such concerns were the true motivation for transferring plaintiff, they would be legitimate and sufficient to justify it.  Plaintiff has not offered any counter-affidavit or other evidence disputing the explanation given by the defendants.  Indeed, his own description of his role in the running of the S.A.P. tends to confirm partially the assertion that plaintiff perceived himself as exercising "ownership" of the program.  In the absence of any disputing evidence, the court must accept the defendants' explanation of the legitimate security reasons for plaintiff's transfer.  Additionally, once plaintiff arrived at Staton, these defendants had no further role or influence in whether plaintiff could participate in the drug programs there.

<u>CONCLUSION</u>

Based on the foregoing undisputed facts and considerations, the court finds that the motion for summary judgment filed by the defendants is due to be granted, and this action is due to be dismissed with prejudice.  A separate order will be entered.

DONE this 26th day of June, 2007.

T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE

12